Welcome to the Ninth Circuit. I'm glad to be joined by my colleague, Judge Bumate. As you know, Judge Hurwitz is also on this panel. He is unable, unfortunately, to attend the argument this morning, but he will be participating, and we will be working through the case with him after the argument. We just have this one case set for argument, so just pay attention to the time. We should have plenty of time for the argument today, given that it's a fairly narrow issue on remand, but let us know if you want to reserve time for rebuttal and just watch your time as we go. So we'll go ahead and hear argument in the case set for argument today, which is United States v. Olivas. Case numbers 20-50182 and 21-50270, and we'll hear first from Mr. Gunn. Carl Gunn Thank you, Your Honor. I'm Carl Gunn. I represent Ms. Olivas. The timer I'm seeing says 20 minutes, but your order had reduced it to 15 minutes, so... Perfect. Let's go ahead and... Thank you for reminding me. We did actually look at this and say we might not need 20 minutes, so the day sheet didn't get updated, and so that communication... You know, it's bad when the staff ignore our own orders. That's not a good thing. We forget about our own orders. I suppose I should have kept my mouth shut, but... No, that's good. If you need a little bit of time, we'll give it to you, but I don't think you'll need it. All right, Your Honor. I'm going to reserve three minutes for rebuttal if I can, and if I have more, great. Your Honors, first of all, let me focus on the Diaz opinion, which of course is what this reamend is all about. In the middle of that opinion, the court gives a hypothetical that I quote in my supplemental brief, and it says in that hypothetical that testimony violates the rule if, quote, the expert concluded that the defendant was part of a group of people that all have a particular mental state, unquote. That's exactly what the expert did here. He said Ms. Olivas was part of a group of people, secretaries, and he said secretaries have a particular mental state. They know everything, so that fits right into the language of the Diaz opinion, and it makes perfect sense if you think about it. I think everyone would agree that an expert can't come in and say Ms. Diaz knew everything. Ms. Olivas knew everything, and all that happens here is he breaks it into two steps. He says secretaries know everything, and Ms. Olivas is a secretary, so I think it squarely violates that. Can we back up? I appreciate that you've jumped into the merits, and there's some interesting issues here, but to the standard of review, do you still maintain that anything other than plain error applies here? I do, Your Honor, as well. Yes, and also I think the air is clean anyway, but I think plain error applies for two reasons. First of all, I think the government waived it by not raising it in the Supreme Court cert opposition. The government can and often does raise such issues in the cert petitions, their cert oppositions. In fact, in the deed— Well, here, I mean, admittedly, the government didn't actually even weigh in on the merits. Basically, the government just came in and said, look, if you're going to take Diaz, then, yeah, we agree that you should probably hold this case. It didn't really weigh in to the merits at all. It seems a little odd that you would have to preserve all merits-based arguments when you're not even weighing in on the merits. Well, I think you make your decision about whether to weigh in on the merits, but the other reason I think plain error doesn't apply here, Your Honor, is I think there was a sufficient objection. You basically—what happens is the government in its pre-trial motion says we're not going to get into the ultimate issue, and then as soon as it starts approaching that, I think the question is about was she passing messages, et cetera. The defense attorney objection says that's ultimate issue. I don't think he has to keep repeating that objection for the next— Let me ask you on that one. Would that be controlled by law of the case? Because we already said plain error applied here. I guess because it's GBR, we are not bound by that? Is that what your position would be? Yes, and when I look back at your memorandum of disposition, I don't think you say plain error, Your Honor. I think you just went to the merits and said it wasn't a direct opinion. Well, yeah, it's a little—admittedly, the disposition on this issue was a little less than clear, although we do say plain error in this section. But you're right. We do say didn't err. So, yeah. I don't read your—I don't read—it's certainly not very clear law of the language I just quoted from the opinion and the testimony we have here. The error is plain after Diaz. And, of course, you look at whether it's plain in light of the law now, not whether it was plain in light of the law back when the district court had the case or you first had the case. So that's— Why is that the reason? I don't understand that rule. I thought the whole point of plain error is that it should have been obvious to the district court judge that there was something wrong. But if the appellate decision that says it's an error doesn't come until after trial, how can that be plain? There's actually a Supreme Court case that addressed that very concern, Your Honor. And they said the rule about plain error isn't a rule of we got you on the district judge. It's a rule of what applies while the case is pending. The Supreme—that very argument was made in the Supreme Court Henderson case that I cite in my supplemental brief. And the Supreme Court weighed the two views. And it said the rule is that what controls is whether it's plain at time of the appellate decision. Because we're not—because plain error isn't about, oh, district judge, you screwed up. It's about we want to apply the law that is obvious now. Okay. Thank you. That makes sense. All right. The other thing— What do we do—can I ask you on this? Because it is an interesting question because you have the Diaz opinion. But what about our prior Ninth Circuit opinions? Because we cited—we relied on Ninth Circuit precedent in our prior mem dispo. I'm just looking back through it. It looks like it's exclusively Ninth Circuit precedent. Is that irrelevant because there's an intervening Supreme Court case? Or do we need to look at—I mean, I guess my question is, do we look solely at Diaz or do we also look at Diaz in conjunction with our prior Ninth Circuit precedent when we're in a plain error? I think you look solely at Diaz to the extent that Diaz—certainly to the extent that Diaz rejects the underlying reasoning of the Ninth Circuit opinion. The Ninth Circuit case law basically looked at whether it was a, quote, direct opinion, unquote, which was the language in your memorandum disposition, or an explicit opinion, which was the language in the Diaz memorandum. No, that's not the test anymore. The test now is this distinction between most defendants, where the defendant might not be included, and all the defendants, where it necessarily has to include the defendant. When the Supreme Court writes an opinion that makes it crystal clear, I think, that that's now the test, then you've got to apply that test. And Ninth Circuit case law, probably like the Fleischman case that's inconsistent with that, is no longer good law. Some of the Ninth Circuit cases where they upheld expert testimony that said things like, oh, the defendant's conduct was, quote, consistent with, unquote, a certain role, that might still be okay because that leaves open the possibility that the defendant's conduct was not part of a conspiracy. But here you don't have that consistent with. You have secretaries know everything, and she is a secretary. So I think in terms of Ninth Circuit case law, yes, you ignore it to the extent it's inconsistent with Diaz. And I think the key Ninth Circuit case law here is consistent with Diaz. The test is no longer direct or explicit opinion. The test is an opinion that necessarily includes the defendant or doesn't necessarily include the defendant. This most all distinction, or as Justice Gorsuch has characterized in his dissent, the distinction between a definitive opinion and a probabilistic opinion. The government comes in, and most of its brief is about how, oh, this didn't change the law at all. I think it's completely clear this changed the law. And I think it's also completely clear, frankly, that our case is on the wrong side, so to speak, for the government of the line. Go ahead. Just going back to the plain error question, the objection that you raised, are you talking about the prelim objections? Or right before the witness was asked what his opinion was on her role, Secretary, there was an objection, but that was based off of the question of whether or not they were passing messages to each other. Is that the objection you're relying on, or is there another objection? No, that's the objection I'm relying on, Your Honor. And if you think about it, what they're passing messages on is part and parcel of her being a secretary. So if that's not objectionable as an ultimate issue, then her being a secretary is not going to be objectionable as an ultimate issue. So I think that's why the objection, making it again, would have been superfluous. Well, I guess the problem with that is that there are two different issues here. One, I mean, the objection is ultimate issue. I mean, an expert is allowed to testify to an ultimate issue unless it's about a mental state. And so that objection doesn't raise that concern. Well, if it's part and parcel of her being a secretary, and then you fit the she's a secretary into the secretary's know everything, I think it is. I mean, I see the argument, Your Honor, but I don't think you need to get there because the error is plain after Diaz anyway. Yeah. Okay. So my question on that, on the plain error, I think you are correct under Diaz if it was one line of testimony that secretaries know everything and that Ms. Olivas is a secretary. I think that would clearly violate Diaz. But given that there was, what, 50 pages of testimony between those two statements, how can you say that that's plain under Diaz? Well, because he said secretary, I don't think it matters how far apart the testimony is. He said a certain class of people know everything. And then he said she's in the class. Well, I guess the difference is what Diaz is concerned about is drawing that direct connection. But here, what you're doing is taking two separate statements and building them together, which does present the Diaz concern. But as he testified to it, there were just two separate statements. When you combine them, then it becomes erroneous. But if alone, they're both fine. I don't think Diaz supports that distinction, Your Honor. I will point out the government likes to point out that it was actually said earlier at another point. The wording was a little different. What does this indicate to you? And he said it indicates she was a secretary. That may be more like 10 pages after the, I can't remember the exact distance there. But I just don't think anything in Diaz supports the idea that it matters how far apart the testimony is. I thought Diaz sort of depends on whether he's opining in a way that the jury would understand that it's unequivocal. And that's, I mean, I think that's the distinction that, you know, especially where it's up on plain error. It's not entirely clear what Diaz said. I the jury is able to make that connection. That seems to fall under Diaz. But where it's plain error, it's hard to know whether the Supreme Court would come out the same way or whether Diaz would come out the same way. Maybe, I mean, I think there's arguments on both sides. It's not clear that it would be plain error if that testimony comes out that, you know, secretaries generally do this and then, you know, 10 pages or 50 pages later in the testimony says, well, she's a secretary. I mean, both of which seem to be true statements. Well, the defense obviously argued differently, Your Honor. But I don't think, well, first of all, he didn't say secretaries generally know. He said secretaries do know everything. And I just don't think there's anything in Diaz that says you get to look at how far apart the two statements are. And I don't see anything in Diaz that supports that. And then you have to get back to the question of the sufficiency of the objection and the government waiver questions. Of course, I don't concede that plain error applies here. What about, even if we get further, you still have to show that it affects a substantial right. I'd be interested in hearing how you think that would. There was pretty overwhelming evidence here that a jury could have found guilt. So could you address that prong if we get that far? I'd really like to, Your Honor. Thank you very much. First of all, this is what defense lawyers very much call a triable case. There are a whole bunch of responses to this evidence the government said was overwhelming. First of all, just in terms of a general defense theory, you have really good reasons why Ms. Galvedon would be visiting her brother anyway. It's her brother. You have money laundering getting attached to sending $1,350 over 10 years. You have a really strong sort of defense gestalt or theory here about how this isn't necessarily a sister being a secretary, but it's a sister being an elderly sister, the oldest sister in the family. Also, all these things the government points to, these sort of damning things in the transcripts, if you look at them more carefully, there's other ways of interpreting those than the government interpreted them. Let me give you just a couple of examples. On page six of its supplemental brief, the government talks about prison correspondence from Holguin, the supposed earlier shot caller to Galvedon that mentioned Olivas, and that quote further confirmed that Holguin regularly communicated with Galvedon's secretary. But the first things they cite in support of that, supplemental excerpt of Rhetoric 321, all it says is, I still keep in touch with Sylvia. That's pretty ambiguous. In footnote four on page six, they have this thing where he's saying, you got to tell Brian, the shot caller, that he's got to sort of back off on these people. Well, look at that, and she says, I'll tell him. But if you look at the transcript, the I'll tell him comes five pages after what's basically ranting and raving by Galvedon, and the defense attorney argues about that in his closing argument at excerpts of record 1944 and 1966. He makes the point that when you look at the tape, the recording, which your honors don't have, when you look at the recording, you basically have this guy ranting and raving, and she just basically goes along with it and says, I'll tell him. So there's a perspective on that. On page eight, the government cites a letter saying, I told her not to be asking favors in your name. The government says that means collecting money. Well, yeah, maybe, I suppose, but maybe it means collecting favors. There's lots and lots of things in these transcripts that this Mexican mafia expert comes in and says mean X, where the defense could argue it means Y. Your honor, reserve. Well, there's no reserve. I mean, we'll give you time for rebuttal, but I think you've used up your time, and so we'll go ahead and give you some time for rebuttal. Okay, well, just one other thing to throw in, your honor. I think one thing to look at here is the defense attorney's closing argument when you're thinking about prejudice. He had a lot to work with. He had a lot to argue, and you have that in the transcripts, but I'll save the rest of my time for rebuttal. Okay, thank you. We'll hear from the government. Good morning, your honor. May it please the court, Chava Murrell on behalf of the United States. Diaz affirmed this court's long-standing precedent on which this court relied in holding that Enriquez's testimony did not run afoul of Rule 704B, and that's because Enriquez's testimony did not draw, much less compel, the ultimate conclusion that Ms. Olivas intended to further the conduct of the enterprise, and that was the relevant mens rea for this case. So, can I ask about that? Because you've made the point. I mean, it is true the Ninth Circuit got affirmed. Always a good day in the Supreme Court when the Ninth Circuit gets affirmed, but it didn't really adopt the same test we did. We have prior case law that says it basically, I forget the words we've used, but it seems like we have to, it's indistinguishable that, or it's very clear that the testimony didn't preclude any other inference. The Supreme Court didn't actually go quite that far. It basically, I mean, as a lot of times is true, the Supreme Court, in one of them, it said, you can't use all as long as you use most, you're okay. So, doesn't that suggest that it isn't a wholesale adoption of the Ninth Circuit's prior cases? Your Honor, I think that holding from the Supreme Court is consistent and affirms the reasoning of this longstanding precedent from the Ninth Circuit. Ultimately, the Supreme Court opined that the agent or the expert there had not stated, expressed an opinion about the ultimate mens rea of the defendant. And this Court's cases and Morales, which this Court cited in its DS memorandum, I'm sorry, in the memorandum opinion in this case, is ultimately that you can speak to predicate matters. You can say that majority of people have this and defendant is one of these people. But as long as you're not saying the defendant had this intent, then you're not running afoul of Rule 704B. And that's exactly what happened here. The relevant intent was whether Ms. Olivas intentionally acted with a purpose to help the contest run as enterprise. And Enriquez, by testifying that she knew everything, did not opine on that matter. In fact, to the contrary, he confirmed that there is such thing as a secretary who does not intend to involve herself in or further the conduct of the enterprise. Where does that come in? Because that does seem to be key. If that's true, that would seem to fall within Diaz. So direct your attention to 6ER 1126-27. And this is Ms. Olivas' counsel's cross of Mr. Enriquez. I'm sorry, 6ER what was the? 1126-27. And this is counsel from Ms. Olivas and he's crossing Rene Enriquez. And he's quoting and he's impeaching Mr. Enriquez from his book called Urban Street Terrorism. And he says, quote, I think you go into detail of the three levels of involvement. And there he's talking about involvement of secretaries. Some were very aware of their involvement in MA activity. Some had an idea they were being utilized for something illicit and adopted don't ask, don't tell policies. And others were kept in the dark and expected to be loyal. So by Mr. Enriquez's own testimony, which by the way, Enriquez later confirmed that those were his statements, defense counsel has established a tier system of not just knowledge, but intention among secretaries. And that became the core of defense counsel's clothing. If you look at 10ER 1963-64, defense counsel repeats that passage from Urban Street Terrorism from Enriquez's book. He draws these three tiers, the very aware secretaries, there's the don't ask, don't tell secretaries, and then there's the kept in the dark. And he says this, the ones that were very aware of their involvement in MA activity, yeah, that's a guilty verdict. That is a secretary who knows exactly what she's doing and embraces it and gets involved with it. He goes then next into this next category, some that were aware that they were being utilized for something illicit and adopted a don't ask, don't tell policy. That would be a non-guilty verdict on the RICO charge. You have to know, you have to purposely get yourself involved with this. It can't be something you can just like turn a blind eye toward, like money laundering. This is something you have to be involved with. And then finally, he says, others were kept in the dark and expected to be loyal. Well, that is Mrs. Olivas. That is a verdict of not guilty. So by defense counsel's own strategy at trial, you can know everything. You can know who Jose Loza is. You can know who Armando Login is. You can know that you're supposed to put money on Laura Hernandez's books. But whether you intend to further the conduct of the enterprise, which is the required mens rea for the conspiracy, that's a different question. And that's what, that's the issue that defense counsel's focused on. In addition, he also said, look, it's not clear that Sylvia Olivas is herself a secretary, but even if she is, she's not in this first category of secretaries who are very aware. So that's why this doesn't run afoul of rule 704B. It's a little distinct from Diaz, but it's still consistent with this court's longstanding precedent. Unless the court has... Yeah. So if I can understand your argument, you would agree that Mr. Enriquez did testify that Mrs. Olivas knows everything about the Mexican mafia, but you're saying that that's not the mental state required under the RICO charge. And so therefore, 704B doesn't apply. That's correct, Your Honor. Basically, we're saying there is such thing as an unwitting or, for lack of a better word, a blind secretary. And the defense was that Mrs. Olivas was... And that's what Diaz seemed to... That's the distinction that Diaz seemed to rely on, is as long as you don't totally negate the opportunity for that group, in that case, it was couriers, as long as you don't say all... By definition, if you're a courier, then you have the mental state, then you don't violate 704. That's correct, Your Honor. And... What was the language... I was just trying to look back. What was the language that the defense points to here? Because I was trying to see how much it lines up with all secretaries. I mean, here, it seems like the testimony was that secretaries know everything. Did it say all secretaries, or is that implied in the testimony that the defense picks up on? It didn't say all secretaries, but even if this court were to interpret it as all secretaries, it still wouldn't run afoul of Diaz or 704B, because... Because of the other testimony that you pointed to. Well, correct. And because a statement that they know everything, which is vague, I think as Your Honor is alluding to, is still not a statement about the mens rea. It's still not an opinion, an explicit opinion, about the defendant's mens rea and what the mens rea was in this case. As defense counsel said in his closing, she must intentionally act with a purpose to help the Conta Rana street gang. Well, but if they say secretaries know everything, how does that not get to mens rea? I mean, let's say there wasn't the exculpatory, the three categories that was elicited in cross-examination that you pointed to, and let's say these came more temporally, and the testimony from the expert was all secretaries know everything about the mafia, and she was a secretary. Would we have plain error in that circumstance? No, Your Honor. You wouldn't have plain error because you would still need a statement that all secretaries intend to further the conduct of the enterprise. And that evidence is distinct from what they know about the enterprise. You can think about a hypothetical professor, or in this case, a secretary, or I'm sorry, a former MA member who knows everything about how an organization is run. He knows the different roles. Does he intend to further the conduct? No. That's different evidence. That's her passing the messages, relaying information back to Galvaldon. That's the other evidence that was elicited at trial. But simply knowing everything about how the activities of an organization, which is what the question was, does not equal an intent to further the activities of the enterprise. So, counsel, in your view, then it doesn't matter what standard review we have here. Even under regular direct appeal, you think the government wins because it's the wrong mental state that they're arguing, essentially. That's correct, Your Honor. It doesn't matter because it wasn't error. However, we do maintain that this is a plain error standard of review. But there is the objection that was made right before the question of whether or not she's a secretary. That seems to encompass it. First of all, that's not a specific objection on the basis of 704B that it's going to the issue of her mental state because that question was not about her mental state. But even so, the rule is very clear in this circuit that it must be a continuing objection and that it must be explicit. So, objecting to whether Olivas and Galvaldon were passing messages regarding MA business is not an explicit objection as to the following question, and it's not an explicit continuing objection at that. Moreover, as we say in our brief, the defendant didn't object to earlier testimony where the expert characterized or described Olivas as a secretary. So, that is plainly, it's plain error. Is that fair to, would that be fair to require or expect them to object when they said she's a secretary before there was an understanding of the import of what that meant? I don't think anybody's, I don't think anybody's actually denying that she was a secretary. I think where that became problematic was when, as the defense argues it, you know, the implication was, well, if you're a secretary, that, you know, gets you across the mental state hurdle just on its own. So, I'm just, I understand your point that didn't object earlier. I'm wondering how much we can hold them to that when there might not have been a reason to object. Well, I think it was explicit in at least one of the earlier questions about Miss Olivas at 6 ER 1066. The question is, what does this indicate to you about Olivas' role in Galvaldon's crew? Could not be more explicit that she's, that the prosecutor is about to elicit testimony about Miss Olivas' role. Your Honor also mentioned that there was no real dispute that Miss Olivas was the secretary. In fact, there was significant dispute about that. So, and so far as that plays into the plainness of the error, I think knowing that being a secretary was a damning accusation and knowing that the prosecutor was specifically eliciting role in the crew earlier on and not they haven't preserved that objection. Can I ask then, assuming that we are talking about the right mental state here, that he was testifying to the mental state required by Enriquez, do you agree that Diaz would have made that an error because, you know, Diaz says, I mean, sorry, that Enriquez first testifies that secretaries know everything and that she's a secretary. The fact that there's, you know, maybe 50 pages of testimony in between doesn't cure that problem. Um, look, I think if we look at the arson example and the hypothetical that's in Diaz, I think that if the testimony were secretaries, all secretaries intend to further the conduct of the enterprise and Miss Olivas is a secretary, you'd be running closer to the hypothetical that the Supreme Court, Justice Thomas laid out, which is problematic. But that's not what we had here. First, I think Judge Nelson draws correct distinction here, which is it was secretaries. It wasn't all secretaries. Um, and two, it wasn't, as we're saying, it's not the mens rea. Yeah. But then did you take any, is there any import to the fact that there was a break in between and, you know, 50 pages of other testimony between those two statements? You know, I don't think Diaz speaks to that. So insofar as that has not been ruled on, it would not be a plain error. Um, so I think there is room to argue that and that, um, just the distance made it let, at least made that connection less tenuous or didn't make that connection explicit to the jury. But even if we were going to the most extreme of, okay, it did put her in the camp of secretaries and secretaries know everything, we still won. Um, finally, can you address briefly the, uh, the, the substantial rights, um, uh, uh, opposing counsel gave, you know, a pretty lengthy discussion of why the evidence wasn't as clear cut. And there, it was not an overwhelm. There was not overwhelming evidence of guilt here. Can you just in your remaining time address that? Sure. Um, well, first your honor, I think you have to look at how everything was used in the trial. And aside from being elicited at the end of Mr. Enriquez's direct testimony, it was never relied upon by the government in either its closing or rebuttal. The government never said, look, because Mr. Enriquez testified that she knows everything, she knows everything. And she intended to further the conduct. That was not how it was used in any way. It was also the testimony about unwitting secretaries provided by Mr. Enriquez that would have cut against any suggestion that all secretaries intend to further the conduct of the enterprise. Um, Mr. Enriquez was not a government agent, which has been, um, a significant factor in court's harmlessness analyses. And finally, there was ample evidence of Mrs. Olivas' knowledge and intent. That was in the form of recorded phone calls, recorded jail visits, handwritten letters, surveillance, a recorded meeting with a CI where she expresses that, you know, you have to be careful about who you talk to. You never know who is informant. My phone might be being tapped. There's statements by co-conspirators acknowledging Mrs. Olivas' role as a secretary and needing to talk to her. Um, there's putting monies on the books of Consus Rana's organization members. I see I'm out of time, but we would ask this court to confirm. Okay. Thank you. Thank you for the argument. And we'll give you two minutes for rebuttal, Mr. Gunn. Thank you, Your Honor. Let me start on the principles of primacy and recency with the last comment. The government did rely on this in closing argument, and I'll get to that. But think about how powerful this is. It's not the government agent. It's an expert who probably knows more about the Mexican mafia than anyone out there. He was in it for 17 years. He's testified about it over 40 times. He lectures on it. He's written books about it. He's not just an expert. He's the expert. And on using it in closing argument, I'd refer you to the very beginning of the government's rebuttal argument. It's at Excerpts of Record 2022. His testimony shows you precisely what type of person becomes a Mexican mafia member. His testimony shows you that the Mexican mafia is an organization built on violence and uses control through intimidation and fear. David Galvedon is a current Mexican mafia member. Silvia Olivas is his secretary. I think they did use it in closing argument, and they used it at the very beginning of their rebuttal, when the jury would be paying the most attention. So, counsel, can you address the whole issue of the mental states, that there are two different mental states being talked about here, and that the one required by RICO isn't the one that Enrique has testified to? That was one of my next points, Your Honor. I just pulled the instruction on conspiracy. There's two mental states. There's two mens reas for conspiracy. One is the intent to further the objections of the conspiracy, but the other is knowing the objectives of the conspiracy. The instruction, I'm not sure it's in the excerpts, but it is in the clerk's record, I think at ECF 3904, page 30. Defendant became a member of the conspiracy knowing of its object and intending to help further. So, there's two mens reas here, and he certainly testified explicitly about one of the mens reas, the knowing, and I think it was Judge Nelson sort of made the point. It sort of is implicit when they, quote, know everything, unquote, that she's also intending to further the objectives, but I don't think it's now. What about secretaries? It didn't say all secretaries. He said the testimony was secretaries. I understand, but I mean, these nuances, unfortunately, in light of Diaz are in some ways just positive because Diaz said you can say most, but you can't say all, and so if you just say secretaries, so that's one thing, and then the second part was this other testimony about the three categories that was elicited on cross examination where it seemed to sort of delve into this idea that it isn't all secretaries, actually, that there's different levels. That's just impeaching him on the testimony on cross, Your Honor. That was just impeaching him with a prior and consistent statement. He didn't withdraw or deny his prior testimony that she is a secretary. Why shouldn't we interpret that to be a clarification of the prior testimony such that the fact that he didn't say all and he just said secretaries now cross examination clarifies that secretaries isn't the entire. I don't think he agreed with that cross examination. He basically disavowed it. At one point, he says, I'm pretty sure it's my writing, but it could have also been edited by the publisher. I mean, he's not even admitting that that's what he said, and of course, this is a book that's 10 years earlier. He's not disavowing what he said on direct, and with all due respect, I think secretaries know everything without any qualification means secretaries. I think that's plain, even if plain air applies, and I would, if I could, grab on to Judge Bumate's questioning there of opposing counsel. I do think you can't just expect them. I mean, the objection he did make two questions earlier was basically part of the ultimate issue testimony, and it got overruled, and he said ultimate issue. So I don't think you don't want attorneys jumping up and repeating it after every question in a series of two or three or four or 10 questions. So I think that was sufficient. Can I ask one other quick question? So you're saying that there's two mental states. I'm just looking at at least the pattern jury instructions, and it says, for a conspiracy, knowing of at least one of its objects and intending to help accomplish it. That to me seems to be one mental state. You know what's going on, and you're intending to accomplish that. But you're suggesting we break it into two separate mental states. I don't know if you need to. I think know everything in the context of his testimony means both of those together. But I think if there's two mens reas, there's two ultimate, you know, there's, if there's, I think that's, it's in the instruction is one element, but it could be. I remember when I first started as a trial lawyer, they told me, oh, you know, make it into five elements instead of two, and prosecutors wanted to have it be two. You know, however you number it in the instruction, there's two things there, and you can't do one ultimate issue and not the other and say that's okay. Okay. Got it. Thank you. All right. Thank you to both counsel for your arguments in this case. Very helpful. And the case is now submitted, and that concludes our argument for this morning. Thank you, your honor. This court for this session stands adjourned.
judges: HURWITZ, NELSON, BUMATAY